UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CARL DEWAYNE WRIGHT** | * | **CIVIL ACTION NO.  14-0744** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **LOUISIANA CORRUGATED PRODUCTS, LLC, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge on reference from the District Court are three motions:  1) motion to dismiss pursuant to Rule 12(b)(6) and in the alternative for summary judgment [doc. # 11] filed by defendant, Vantage Health Plan, Inc. ("Vantage"); 2) motion for judgment on the pleadings [doc. # 17] filed by defendants, Louisiana Corrugated Products, LLC and U.S. Corrugated, Inc. (collectively, "LAC"); and 3) motion for partial summary judgment [doc. # 31] filed jointly by defendants, Vantage and LAC.  As explained in greater detail below, it is recommended that defendants' joint motion for partial summary judgment [doc. # 31] be GRANTED; that defendants' motion to dismiss pursuant to Rule 12(b)(6) and in the alternative for summary judgment [doc. # 11] and motion for judgment on the pleadings (converted motion for summary judgment) [doc. # 17] both be GRANTED-IN-PART; and that the matter be stayed for a period of 60 days.

## Background

On March 11, 2014, Carl DeWayne Wright filed the instant suit for damages in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana, against his former employer – LAC, and the issuer of his employer's group health care policy – Vantage.  (Petition, ¶¶ 1-4). Wright alleges that in January 2014, Vantage pre-authorized his surgery with  neurosurgeon,

Bernie McHugh, M.D. (Petition, ¶¶ 8-10; Jan. 7, 2014, Letter from Vantage to Dr. McHugh, Petition, Exh. A).[1] Wright underwent the surgery on January 6, 2014. (Petition, ¶ 11).[2] On January 16, 2014, Vantage notified Dr. McHugh's staff that it had denied coverage for the surgery because Vantage learned that Wright had been discharged from employment prior to the surgery. *Id*., ¶¶ 12-13.

Wright alleges that he was not notified of his "alleged termination" as required by the Consolidated Omnibus Budge Reconciliation Act ("COBRA"), and thus, did not have the opportunity to obtain replacement health care insurance. *Id*., ¶ 14. He further contends that he relied to his detriment on Vantage's post-surgery, pre-authorization. *Id*., ¶ 15.

Wright alleges that as a result of defendants' conduct and omissions, he has been deprived of further necessary medical care, which has protracted his disabilities. *Id*., ¶ 16. Thus, he seeks damages for prolonged pain and suffering, loss of income, increased and extended medical expense, the cost of the unpaid treatment rendered by Dr. McHugh, out of pocket medical expenses, reduction in his chances of recovery because of the delay in treatment, and the reduction in, and/or loss of portability of insurance coverage. *Id*., ¶ 17. He also seeks reasonable attorney's fees for failure to provide proper and required notice of termination. *Id*., ¶ 18.

On April 3, 2014, Wright amended his petition to assert claims for statutory penalties and attorney's fees stemming from defendants' conduct, including their failure to provide proper notice of termination and to pay insurance benefits as required. *See* 1st Suppl. & Amend.

---

[1] The letter stated that the hospital admission was approved based on a determination of medical necessity for inpatient care. *Id*. It cautioned, however, that "**[p]ayment of benefits is subject to benefit plan requirements and member eligibility at the time services are rendered**." *Id.* (emphasis added).

[2] The "pre-authorization" letter post-dates the actual surgery.

Petition. The next day, LAC removed the case to federal court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. (Notice of Removal). Vantage joined in, and consented to the removal. (Consent to Removal [doc. # 1-2]).

On April 15, 2014, Vantage filed the instant motion to dismiss for failure to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, motion for summary judgment in accordance with Federal Rule of Civil Procedure 56. LAC filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on April 21, 2014. Both motions seek to dismiss plaintiff's claims for failure to exhaust available administrative remedies before filing suit.

Defendants' motions rely on the premise that the underlying group health care insurance policy issued by Vantage is an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* On April 30, 2014, however, plaintiff filed his opposition memoranda, in which he took issue with defendants' premise. *See* Pl. Opp. Memos. [doc. #s 21 & 22]. On May 8, 2014, defendants filed their reply memoranda. [doc. #s 26 & 28]. Because the motions implicated threshold issues regarding ERISA, and whether ERISA preempted all related state law claims, the court ordered the parties to submit a joint stipulation, statement, or dispositive motion to address these matters. (May 12, 2014, Order [doc. # 29]).

On May 19, 2014, the parties jointly stipulated that

> [t]he plan at issue in this case is the Group Freedom Plan issued by Vantage Health Plan, Inc., sponsored in name by U.S. Corrugated Products, LLC, and filed before the Court in Doc. No. 12-1 (the "Plan"). Plaintiff was a participant in the Plan. The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") governs the Plan.

(Joint Stipulation [doc. # 30]).

However, the parties were unable to agree as to whether ERISA preempted all state law claims related to the employee benefit plant at issue. Accordingly, on May 27, 2014, LAC and Vantage joined in a motion for partial summary judgment seeking a determination that all of plaintiff's claims are preempted by ERISA. Plaintiff filed his opposition to the motion on June 18, 2014. (Opp Memo. [doc. # 36]). LAC and Vantage filed a joint reply brief on June 24, 2014. (Reply [doc. # 41]). Thus, the matter is ripe.

<u>**Analysis**</u>

I. **Motion for Judgment on the Pleadings vs. Motion to Dismiss vs. Motion for Summary Judgment**

Rule 12(c) provides that "*[a]fter the pleadings are closed*--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c) (emphasis added). Here, LAC's Rule 12(c) motion is premature because none of the defendants have filed an answer, and therefore, the pleadings are *not* closed. *See Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008) (party may move for judgment on pleadings *after* the filing of complaint *and* answer); *New York State United Teachers v. Thompson*, 459 F. Supp. 677, 680 (N.D. N.Y. 1978) (Rule 12(c) motion may not be made by a defendant until after he has answered). Nonetheless, because the Rule 12(c) standard is the same as the Rule 12(b)(6) standard,[3] the court may treat the motion as filed under the latter, pre-answer device. *See e.g., Thompson, supra*; *MacFadden v. GMAC Mortgage, LLC*, Civ. Action No. 13-0091, 2013 WL 2422579 (S.D. Tex. June 3, 2013).

In any event, if evidence outside of the pleadings is presented to the court and used in

---

[3] *PHI, Inc. v. Office & Professional Employees Int.'l Union*, 2010 WL 3034712 (W. D. La. July 30, 2010) (citations omitted).

deciding a 12(b)(6) or 12(c) motion, the court must convert the matter to a motion for summary judgment. Fed.R.Civ.P. 12(d); *Knighton v. Merscorp Inc.*, 304 Fed. Appx. 285, 287 (5th Cir. 2008) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir.1993)). In the matter *sub judice*, Vantage submitted an affidavit from its compliance coordinator, Jessica Self, in which she averred that Wright had not filed a grievance or appeal. (Self Affidavit; Vantage M/Dismiss/MSJ). Defendants necessarily rely on this evidence to support their exhaustion argument; thus, the court must convert the 12(b) and (c) motions into motions for summary judgment. Fed.R.Civ.P. 12(d).[4]

In the event of conversion, Rule 12(d) requires that all parties be afforded a reasonable opportunity to present all material pertinent to a motion for summary judgment. *Id.* Specifically, the notice and hearing requirements of Rules 12(b) and 56(c) of the Federal Rules of Civil Procedure must be adhered to. *Mackey v. Owens*, 1999 WL 423077 (5th Cir. June 2, 1999) (unpubl.).

The court, however, need not give a party "express notice" that a motion to dismiss will be treated as a motion for summary judgment:

> given [Rule 12(d)]'s express declaration that a motion to dismiss shall be treated as a motion for summary judgment where matters outside the pleadings are presented to and not excluded by the court, the simple act of placing matters outside the pleadings before the court provides adequate notice that a motion to dismiss may be converted into a motion for summary judgment.

*Mackey, supra* (internal citation omitted).

Here, however, plaintiff had notice that Vantage's motion could be treated as a motion for

---

[4] LAC suggests in its brief that it was incumbent on plaintiff to plead exhaustion. The court disagrees. Exhaustion of administrative remedies is not a jurisdictional prerequisite. *Hager v. NationsBank N.A.*, 167 F.3d 245, 248 (5th Cir. 1999) (citation omitted). Rather, failure to exhaust is a defense to litigation to be raised and proven by defendants. *See Chailland, supra*.

summary judgment because Vantage alternatively sought relief under Rule 56, as necessary.

Furthermore, the court always possesses the inherent authority to dismiss an action *sua sponte*, without motion by a defendant. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322, 1995 WL 534901, at *2 (5th Cir. 1995) (unpubl.). Finally, a report and recommendation itself provides sufficient notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magourik v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

## II.  Summary Judgment Standard

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v.*

*Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*  "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant."  *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007) (citation omitted).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.  While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322-323.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323.

When a movant bears the burden of proof on an issue, he must establish "beyond peradventure[5] all of the essential elements of the claim . . . to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must affirmatively establish his right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

### III.  Plaintiff's Claims are Preempted by ERISA

---

[5] I.e., beyond doubt.

There are two distinct types of preemption under ERISA: complete preemption under § 502(a) (the civil enforcement provision codified at 29 U.S.C. § 1132(a)) and conflict or express preemption under § 514 (codified at 29 U.S.C. § 1144(a)). *See Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 275 n.34 (5th Cir. 2004); *Cunningham v. Petroleum Prof'l Int.*, Civ. Action No. 04-2528, 2006 WL 1044153 (W.D. La. Apr. 19, 2006). The former supports federal question jurisdiction, whereas the latter does not. *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 291 (5th Cir. 1999) (*en banc*).[6]

Complete preemption occurs when a federal statute wholly displaces a state law cause of action, and in effect, converts or recasts the state law claim into a federal cause of action. *Metropolitan Life Insurance Company v. Taylor,* 481 U.S. 58, 62-66, 107 S.Ct. 1542 (1987); *Aetna Health, Inc., v. Davila,* 542 U.S. 200, 207-211, 124 S.Ct. 2488 (2004).[7] ERISA's civil enforcement provision is a statute with such preclusive force for any cause of action that falls within its "scope." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (*en banc*).

---

[6] Plaintiff's COBRA claim appearing on the face of his petition suffices to confer subject matter jurisdiction, via federal question, 28 U.S.C. § 1331. *See* May 21, 2014, Order [doc. # 29]. The court may exercise supplemental jurisdiction over plaintiff's state law claims, 28 U.S.C. § 1367.

[7] Although complete preemption is not needed to support subject matter jurisdiction in this case, complete preemption analysis *is* necessary to convert plaintiff's claim for denial of benefits under state law into a claim for denial of benefits under ERISA as presupposed by defendants' motions to dismiss for failure to exhaust administrative remedies. Otherwise, plaintiff's state law claims for denial of benefits simply would be subject to dismissal on the basis of conflict preemption.
  The court further notes, at this juncture, that plaintiff's claim for failure to provide timely notice under COBRA alleges a statutory violation that does not require administrative exhaustion. *See Thompson v. Origin Tech. In Bus., Inc.*, Civ. Action No. 99-2077, 2001 WL 1018748 (N.D. Tex. Aug. 20, 2001) (administrative exhaustion does not apply to action for failure to notify under COBRA); *Sample v. City of Sheridan*, Civ. Action No. 10-01452, 2012 WL 1247223 (D. Colo. Apr. 13, 2012) (exhaustion of administrative remedies is not required when claim for denial of COBRA benefits is based on a statutory violation of ERISA).

8

A cause of action falls "within the scope" of ERISA's civil enforcement provision when the plaintiff *could* have brought his claim under ERISA § 502(a)(1)(B), *and* where there is no other independent legal duty implicated by the defendant's actions. *Davila*, 542 U.S. at 210, 124 S.Ct. 2488. In making this determination, the court must examine the plaintiff's petition, the statute upon which his claims are based, and the various plan documents. *Id*.

The court discerns from plaintiff's petition, as amended, state law claims for recovery of health benefits purportedly due under a group health plan; statutory penalties and fees for failure to timely pay the foregoing benefits under Louisiana Revised Statute § 22:1821; and a claim for detrimental reliance under Louisiana Civil Code Article 1967 stemming from Vantage's after-the-fact, preauthorization of plaintiff's surgery

Wright does not explain the statutory or codal authority for his claim to recover unpaid benefits. The omission, however, is of no moment, because whether the claim derives from § 22:1821, Civil Code Article 1994 for breach of contract, or some other source, the end result is still the same. It is manifest that Wright could have brought his claim for failure to pay healthcare benefits under ERISA § 502(a)(1)(B).[8] Furthermore, Vantage's duty to pay benefits does not arise independently of ERISA or the plan terms. Indeed, there is no indication that § 22:1821 or Article 1994 impose any liability upon Vantage so long as Vantage acted in compliance with Plan terms. Thus, consideration and interpretation of plan terms is necessary

---

[8] ERISA § 502(a)(1)(B) provides that "[a] civil action may be brought — (1) by a participant or beneficiary — . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As the Supreme Court explained, "[t]his provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496.

for a claim for denial of benefits under these state law provisions. As plaintiff's state law claim for denial of benefits is not entirely independent of the federally regulated contract, it necessarily falls within the scope of ERISA § 502(a)(1)(B) and is thereby completely preempted. *Davila, supra*.

In contrast to § 22:1821, ERISA's § 502(a)(1)(B) does not authorize penalties for the unreasonable failure to timely pay benefits. Accordingly, the court will analyze this claim and plaintiff's claim for detrimental reliance under principles of ordinary or express preemption.

ERISA's express preemption provision, § 514(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan. . . ." 29 U.S.C. § 1144(a) (emphasis added). This provision is purposefully expansive, and is intended to "ensure that employee benefit plan regulation would be exclusively a federal concern." *Davila*, 542 U.S. at 208, 124 S. Ct. at 2495. Thus, any state-law cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila, supra*.

The courts apply a two-prong test to determine whether a state law "relates to" an employee health benefit plan for purposes of ERISA preemption: "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *King v. Bluecross Blueshield of Alabama*, 439 F. App'x 386, 389 (5th Cir. 2011) (citing *inter alia Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir.2006). Because ERISA preemption is an affirmative defense, defendants bear the burden of proof on both

elements. *Bank Of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (citations omitted).

It is manifest that plaintiff's claims are conflict-preempted by ERISA. Courts consistently have recognized that ERISA preempts a claim for unpaid benefits, penalties, and fees under Louisiana Revised Statute § 22:657 (now § 22:1821).[9] *Ponstein v. HMO Louisiana Inc.*, Civ. Action No. 08-663, 2009 WL 1309737 (E.D. La. May 11, 2009) (and cases cited therein). Indeed, a § 22:657/1821 claim centers upon whether plaintiff had a right to receive benefits under the terms of an ERISA plan, which affects the relationship between traditional ERISA entities. In fact, by its own terms, § 22:1821 defers to ERISA plans: "[t]he provisions of this Paragraph shall not apply to medical benefit plans that are established under and regulated by the Employment Retirement Income Security Act of 1974." La. R.S. § 22:1821(f).

Furthermore, although ERISA does not per se preempt claims for detrimental reliance,[10] Wright's claim *is* preempted because it stems from a representation made by the plan's insurer, Vantage, to a would-be participant, purportedly confirming coverage for the procedure under the Plan. *See King, supra* (affirming that detrimental reliance claim was preempted);[11] *Jones v.*

---

[9] Effective January 1, 2009, the Louisiana Legislature amended and reenacted Title 22 of the Louisiana Revised Statutes to re-designate then-existing provisions of Title 22 into a new format and number scheme *without changing the substance of the provisions*. (Acts 2008, No. 415, § 1).

[10] *Malbrough v. Kanawha Ins. Co.*, Civil Action No. 11-1842, 2012 WL 4856061 (W.D. La. Oct. 11, 2012).

[11] In *King*, plaintiff alleged that Blue Cross representatives told him and his physician that he was covered for surgery under the policy. After surgery, however, Blue Cross refused to pay the bill because the policy had been canceled at some earlier, unspecified date. In stark contrast to this case, King maintained that he would *not* have elected to undergo the procedure if it had not been for Blue Cross's representations. *See King, supra*; *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007) (detrimental reliance claim requires change in position to

*Aetna Life Ins. Co.*, Civ. Action No. 11-266, 2012 WL 1580604 (E.D. Tex. Apr. 2, 2012), *report and recommendation adopted,* 2012 WL 1580557 (E.D. Tex. May 4, 2012); *James v. Connecticut Gen. Life Ins. Co.*, Civ. Action No. 07-799, 2010 WL 3724514, n3 (M.D. La. Aug. 5, 2010) *report and recommendation adopted,* 2010 WL 3724513 (M.D. La. Sept. 14, 2010); *Bank of Louisiana v. Aetna US Healthcare, Inc.*, Civ. Action No. 02-236, 2003 WL 21634306 (E.D. La. July 9, 2003) (detrimental reliance claim preempted).

Plaintiff does not seriously contest the foregoing analysis. Instead, he contends that his claim(s) fall under ERISA's "savings clause," which provides that "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).[12] For a state law to be considered a law that regulates insurance under the savings clause, it must meet two requirements: 1) "the state law must be specifically directed toward entities engaged in insurance;" and 2) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Garcia v. Best Buy Stores, L.P.*, 416 F. App'x 384, 386 (5th Cir. 2011) (*citing* Ky. *Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329, 341–342, 123 S.Ct. 1471 (2003)).

To affect the risk-pooling arrangement, a "statute must alter the scope of permissible bargains between insurers and insureds and thus substantially affect the risk-pooling arrangements that insurers may offer." *Ellis*, 394 F.3d at 277-78 (citations and internal quotation

---

the promisee's detriment because of the reliance).

[12] Subparagraph (B) (a/k/a/ the "deemer clause") restricts the savings clause by exempting employee benefit plans from state regulation as insurance companies. *Custom Rail Employer Welfare Trust Fund v. Geeslin*, 491 F.3d 233, 235 (5th Cir. 2007) (citing *inter alia*, 29 U.S.C. § 1144(b)(2)(B)).

marks omitted). Statutes that are remedial in nature, i.e. that provide remedies "to which the insured may turn when injured by the bad faith of the insurer," do not affect the bargain that an insurer makes with its insured, and therefore, do not affect the "risk" contracted for by the insurer. *Ellis, supra*.

Here, § 22:1821 authorizes recovery of benefits due under the policy, plus penalties and fees for an insurer's unreasonable failure to timely pay benefits. La. R.S. § 22:1821. As such, it is remedial in nature and does not affect the risk (a participant's health care costs) contracted for under the policy. *See Ellis, supra*; *Letter v. Unumprovident Corp.*, Civ. Action No. 02-2694, 2003 WL 22077803 (E.D. La. Sept. 5, 2003) (§ 22:657 does not substantially affect the risk pooling arrangement between insurer and insured).[13] Having failed at least one component of the *Miller* test, the court necessarily finds that § 22:1821 does not fall within ERISA's savings clause. *Tingle v. Pac. Mut. Ins. Co.*, 996 F.2d 105, 108 (5th Cir. 1993) (applying the old three part *Metropolitan Life* test).[14] Thus, plaintiff's § 22:1821 claim for penalties is preempted by ERISA.

---

[13] The court notes that plaintiff submitted an affidavit from Christine Berry, an Associate Professor and Director of the Department of Risk Management and Insurance at the University of Louisiana, wherein she stated that "§ 22:1821 has a substantial effect and impact upon the relationship between the provider/insurer/administrator and beneficiary and/or upon the risk pool." (Berry Affidavit; Pl. Opp. Memo., Exh. [doc. # 36-1]). Ms. Berry's opinion, however, is conclusory and unsupported. *See Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) ("unsupported . . . affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.") (citations and internal quotation marks omitted). Moreover, by its terms, § 22:1821 does not apply to medical benefit plan under ERISA, and thus could not affect the risk bargained for at the inception of the relationship between the parties. La. R.S. § 22:1821(f).

[14] Plaintiff does not argue that his detrimental reliance claim is subject to ERISA's savings clause. Indeed, as Article 1967 is not directed at entities engaged in insurance, it plainly does not meet the exception provided by § 1144(b)(2)(B).

## IV. Plaintiff Failed to Exhaust Administrative Remedies

ERISA requires that employee benefit plans provide administrative remedies for persons whose claims for benefits have been denied. 29 U.S.C.A. § 1133. The Fifth Circuit has adopted "the common law rule that a plaintiff generally must exhaust administrative remedies afforded by an ERISA plan before suing to obtain *benefits* wrongfully denied." *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 (5th Cir. 1995) (emphasis added) (citing *Denton v. First Nat'l Bank of Waco, Tex.*, 765 F.2d 1295, 1300-03 (5th Cir. 1985)).[15] The exhaustion requirement presupposes that the basis for the lawsuit stems from some action of an ERISA plan, and that the plan is capable of providing the relief sought by plaintiff. *Id*. (citations omitted). However, a claim asserting a statutory violation does not require administrative exhaustion. *See Thompson, supra*.

A plaintiff must exhaust an administrative remedy available under an ERISA plan, even if that remedy is phrased permissively. *Long v. Aetna Life Ins. Co.*, Civ Action No. 14-403, 2014 WL 4072026 (E.D. La. Aug. 18, 2014) (citations omitted). Moreover, "plaintiffs seeking ERISA plan benefits are bound by the plan's administrative procedures and must use them before filing suit even if they have no notice of what those procedures are." *Bourgeois*, 215 F.3d at 480 (citation omitted).

Here, the Plan provides that a member has the right to file a complaint related to coverage. (Plan, Section XII: Appeal and Grievance Procedures; M/Dismiss, Exh. [doc. # 12]).

---

[15] The exhaustion requirement seeks to give effect to Congress's preference that "ERISA trustees and not the federal courts be responsible for the actions of plan administrators, providing a clear record of administrative action if litigation ensues, and allowing judicial review of fiduciary action or inaction under the abuse of discretion standard, where applicable, rather than *de novo*." *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corporations*, 215 F.3d 475, 479 (5th Cir. 2000) (citation omitted).

An appeal is a complaint that the member files when he wants Vantage to reconsider and change a decision related to Covered Services (including a denial of, reduction in, or termination of a Covered Service . . . *Id*. A formal appeal must be written and mailed or hand-delivered to the MNRO-Medical Director within 180 days from the date of the initial decision to deny benefits. *Id*. The Medical Director will resolve the Appeal and respond in writing within 30 working days after receipt of the Appeal. *Id*. A member who remains dissatisfied with the First Level Internal Appeal decision may seek a Second Level Review, which is voluntary and limited to issues regarding medical necessity. *Id*.

In the instant case, it is uncontroverted that Wright failed to exhaust even the first step of the foregoing appeal procedure. (Affidavit of Jessica Self; M/Dismiss, Exh. 1). Instead, plaintiff argues that exhaustion is futile because it is unlikely that Vantage will find him to be still employed at the time he received the medical care, and thus eligible for benefits. *See* Pl. Opp. Memo., pg. 6 [doc. # 36]. However, "[a] failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility." *Harris v. Trustmark Nat. Bank*, 287 Fed. App'x 283, 295 (5th Cir. 2008) (quoting *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004). Here, plaintiff has not demonstrated that Vantage is hostile towards, or biased against, him. Thus, his futility argument lacks merit. *Harris, supra*.

## Conclusion

Pursuant to the parties' joint stipulation, the court finds that the subject plan is an ERISA plan. Furthermore, plaintiff's state law claim for failure to pay benefits under the plan is completely preempted and recast as a claim under ERISA § 502(a)(1)(B). However, because plaintiff failed to exhaust administrative remedies before filing suit, his converted claim under

ERISA § 502(a)(1)(B) is premature and must be dismissed without prejudice until such time as he exhausts those remedies. *See Galvan v. SBC Pension Benefit Plan*, 204 F. App'x 335, 340 (5th Cir. 2006). Plaintiff's remaining state law claims for recovery of penalties and fees under § 22:1821 and for detrimental reliance damages under Louisiana Civil Code Article 1967 are conflict-preempted by ERISA. Thus, they are subject to dismissal, with prejudice, on that basis. The court will maintain plaintiff's claim for failure to provide COBRA notification against both LAC and Vantage,[16] but stay prosecution of the claim until such time as plaintiff has exhausted his administrative remedies and amends his complaint to assert his claim for unpaid benefits under ERISA § 502(a)(1)(B).[17]

For the above-assigned reasons,

IT IS RECOMMENDED that defendants' joint motion for partial summary judgment [doc. # 31] be GRANTED, and that judgment be entered in favor of defendants declaring 1) that plaintiff's state law claim for unpaid benefits under the Plan is completely preempted by ERISA, and thus, recast as a claim under ERISA § 502(a)(1)(B), and 2) that plaintiff's state law claims for penalties and detrimental reliance under La. R.S. § 22:1821 and Louisiana Civil Code Article

---

[16] The court notes that the group health plan, the employer, *and* the administrator each enjoy certain COBRA notification obligations that arise at varying times. *See Kidder v. H & B Marine Inc.*, 932 F.2d 347, 355 (5th Cir. 1991) (citing 29 U.S.C. § 1166(a)). Whether or not defendants owed and/or satisfied their notice obligations is beyond the scope of the instant motions.

[17] The court notes plaintiff's misgivings regarding his ability to persuade the plan administrator that he was employed during the relevant period such as to make him eligible for benefits under the Plan. *See* Pl. Opp. Memo., pg. 6 [doc. # 36]. If plaintiff is so convinced, and if he does not anticipate a good faith argument for persuading this court that the plan administrator abused its discretion in its determination (assuming, but not deciding, that a deferential standard of review is applicable), then the plaintiff may elect to forego his § 502(a)(1)(B) claim and proceed solely with his COBRA notification claim. If so, he should promptly advise the court.

1967, respectively, are conflict-preempted by ERISA.

IT IS FURTHER RECOMMENDED that plaintiff's state law claims for penalties and detrimental reliance under Louisiana Revised Statute § 22:1821 and Louisiana Civil Code Article 1967, respectively, be DISMISSED, with prejudice, as preempted.

IT IS FURTHER RECOMMENDED that the motion to dismiss pursuant to Rule 12(b)(6) and in the alternative for summary judgment [doc. # 11] filed by defendant, Vantage, and the motion for judgment on the pleadings (converted motion for summary judgment) [doc. # 17] filed by defendant(s), LAC, be GRANTED IN PART, and that plaintiff's recast claim for unpaid benefits under ERISA § 502(a)(1)(B) be DISMISSED, without prejudice.

IT IS FURTHER RECOMMENDED the motions [doc.#s 11 & 17] otherwise be DENIED.

IT IS FURTHER RECOMMENDED that the court stay the matter for a period of 60 days to permit plaintiff to exhaust administrative remedies (if he is so inclined), and thereafter, to amend his complaint to assert his *then* exhausted § 502(a)(1)(B) claim.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 23rd day of September, 2014.

*[signature]*
_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE