UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CARL DEWAYNE WRIGHT** | * | **CIVIL ACTION NO. 14-0744** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **LOUISIANA CORRUGATED PRODUCTS, LLC, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned magistrate judge, on reference from the District Court, are two cross-motions: 1) a motion for declaratory judgment [doc. # 52] filed by plaintiff Carl DeWayne Wright; and 2) a joint motion for partial summary judgment [doc. # 54] filed by defendants Vantage Health Plan, Inc. ("Vantage"), Louisiana Corrugated Products, LLC, and U.S. Corrugated, Inc.[1]  As ordered by the court, the motions address the standard of review to be applied to plaintiff's claim for wrongful denial of benefits under ERISA.  For reasons explained below, it is recommended that plaintiff's motion [doc. # 52] be GRANTED, and that defendants' joint motion for partial summary judgment [doc. # 54] be DENIED.

**Background**

On March 11, 2014, Carl DeWayne Wright filed the instant suit for damages in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana, against his former employer, LAC, as well as the issuer of his employer's group health care policy, Vantage. (Petition, ¶¶ 1-4).  Wright alleges that in January 2014, Vantage pre-authorized his surgery with

---

[1] Where necessary, Louisiana Corrugated Products, LLC and U.S. Corrugated, Inc. are referred to collectively as "LAC."

neurosurgeon, Bernie McHugh, M.D. (Petition, ¶¶ 8-10; Jan. 7, 2014, Letter from Vantage to Dr. McHugh, Petition, Exh. A).² Wright underwent the surgery on January 6, 2014. (Petition, ¶ 11).³ On January 16, 2014, Vantage notified Dr. McHugh's staff that it had denied coverage for the surgery because Vantage learned that Wright had been discharged from employment prior to the surgery. *Id.*, ¶¶ 12-13.

On April 4, 2014, defendants, LAC (with the consent of co-defendant, Vantage), removed the case to federal court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. (Notice of Removal). Thereafter, on April 7, 2014, the District Court issued its standard Civil Case Management Order, which, in all cases arising under ERISA, requires the parties to:

> **I. Within 60 days** of the date of this Order, . . . **file a** (1) joint stipulation, (2) statement, or (3) motion for summary judgment or other dispositive motion as to the following issues:
> a. whether ERISA governs the employee benefit plan at issue,
>
> b. whether the plan vests the administrator with discretionary authority to determine eligibility for benefits and/or construe and interpret the terms of the plan, and
>
> c. whether ERISA preempts all state law claims related to the employee benefit plan at issue . . .

(April 7, 2014, Civil Case Management Order [doc. # 7] (emphasis in original).

As further ordered by the court, the parties previously addressed issues (a) and (c). *See* doc. #s 29-32, 36, & 41. However, they did not address issue (b).

Accordingly, on January 21, 2015, the court afforded the parties 14 days to submit a joint

---

² The letter stated that the hospital admission was approved based on a determination of medical necessity for inpatient care. *Id.* It cautioned, however, that "**[p]ayment of benefits is subject to benefit plan requirements and member eligibility at the time services are rendered**." *Id.* (emphasis added).

³ The "pre-authorization" letter post-dates the actual surgery.

stipulation, statement, or dispositive motion that addressed issue (b), i.e., whether the plan vests the administrator with discretionary authority to determine eligibility for benefits and/or construe and interpret the terms of the plan. (Jan. 21, 2015, Order [doc. # 51]).

On January 28, 2015, plaintiff filed the instant motion for declaratory judgment. On February 3, 2015, all three defendants joined in a cross-motion for partial summary judgment. On February 16 and 19, 2015, defendants and plaintiff, respectively, filed their oppositions to the cross-motions. [doc. #s 56 & 60]. Neither side has filed a reply, and the time to do so has lapsed. Thus, the matter is ripe.

## Governing Standard

### I. Motion for Declaratory Judgment

Plaintiff does not specify a federal rule of civil procedure to support his motion for declaratory judgment – nor is the court aware of any. Under 28 U.S.C. § 2201, however,

> any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201 (West).[4]

Nevertheless, the limited issue now before the court (whether the plan vests the administrator with discretionary authority to determine benefit eligibility) is not the sort of determination that has the force and effect of a final judgment as contemplated by the declaratory judgment statute. Rather, the present dispute constitutes a single issue in a still unresolved claim and case. Thus, the court will analyze plaintiff's motion under the motion that best accomplishes his purpose: a

---

[4] The Fifth Circuit has remarked that, "[w]hether and when to issue a declaratory judgment is at the discretion of the district court." *Am. Fed'n of State, Cnty., & Mun. Employees, Local 59 v. El Paso City/Cnty. Health Dist.*, 198 F.3d 240 (5th Cir. 1999) (citation omitted).

motion for partial summary judgment. *See e.g., Johnson v. Cnty. of Horry*, S.C.,Civil Action No.09-1758, 2012 WL 3260426, at *4 (D.S.C. July 19, 2012) R&R adopted, 2012 WL 3260417 (D.S.C. Aug. 8, 2012), aff'd, 509 F. App'x 256 (4th Cir. 2013) (treating motion for declaratory judgment as motion for summary judgment).

## II.  Motion for Summary Judgment

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at

255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[5] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must

---

[5] I.e., beyond doubt.

affirmatively establish its right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Analysis

"ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.'" *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998) (citation omitted).  To achieve these goals, ERISA requires every employee welfare benefit plan to,

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

When deciding whether to pay or deny benefits, a plan administrator must make two general types of determinations: "[f]irst, [s]he must determine the facts underlying the claim for benefits. . . . Second, [s]he must then determine whether those facts constitute a claim to be honored under the *terms* of the plan." *Schadler*, 147 F.3d at 394 (citation omitted) (emphasis in original).  Furthermore, "the administrator's *factual* determinations are reviewed for abuse of discretion, regardless of the administrator's ultimate authority to determine benefit eligibility." *Chacko v. Sabre, Inc.*, 473 F.3d 604, 610 (5th Cir. 2006) (citations omitted); *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329-30 (5th Cir. 2014).  In contrast,  a plan administrator's *interpretation or application of the plan* is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Aboul-Fetouh v. Employee Benefits Committee*,  245 F.3d 465,

471-472 (5th Cir. 2001) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956-57 (1989)) (internal quotation marks omitted).

Here, the parties do not identify which determinations of the administrator are at issue, and therefore, do not address whether they constitute factual or plan term interpretation decisions. As the court appreciates the matter, however, Vantage ultimately denied coverage because, pursuant to information provided by LAC, plaintiff was not eligible for coverage on the date of service. (Oct. 28, 2014, Appeal Review Decision; Admin. Record, Exh. A [doc. # 47]). Specifically, the Plan provides that an employee's coverage will terminate, *inter alia*, at "the end of the month during which the Employee no longer meets eligibility requirements under this Plan (unless otherwise stated in the Master Group Contract) . . ." (Plan, Section VIII(C)(1); Admin. Record).[6]

Moreover, on January 7, 2014, LAC forwarded to "Angela Hemphill" (presumably a Vantage representative), a list of employees and their termination dates that needed to be "removed." (Jan. 7, 2014, e-mail from Jessica Coulter to Angela Hemphill; Admin. Record, pg. 101). Included on the list was Carl Wright, with a termination date of "9/1/13." *Id*. Consequently, Vantage determined that Wright's coverage ended as of "10/31/2013," – the end of the month after his discharge. *See* Certificate of Health Plan Coverage; Admin. Record, pg. 114.[7]

---

[6] Furthermore, "[e]mployees eligible for coverage under this Plan are: a) permanent Employees of the Employer . . . working for the Employer on a regular weekly schedule . . . or b) . . . retirees of the Employer." (Plan, Section VII(A)(1)).

[7] Conversely, plaintiff argues that he was an employee of LAC at the time that Vantage "pre-certified" the medical treatment. (Oct. 7, 2014, Letter from Oscar Barnes to Layna Cook; Admin. Record, Exh. A, pg. 116). Because the certification letters are dated January 7, 2014, plaintiff apparently maintains that he still was an employee through the dates that he received

The court finds that whether, and when, LAC terminated plaintiff's employment – at least for purposes of his denial of benefits claim – is a factual determination to be reviewed for abuse of discretion. *See Patton v. Jacobs Eng'g Grp.*, Civ. Action No. 05-1282, 2009 WL 89699, at *3 (M.D. La. Jan. 13, 2009) (referring to employment status as a factual determination); *Goldman v. Hartford Life & Accident Ins. Co.*, Civ. Action No. 03-0759, 2004 WL 2059838, at *2 (E.D. La. Sept. 9, 2004) (plaintiff's status as a temporary employee was a factual determination).

However, that does not end the present inquiry. Without the benefit of the parties' arguments on the merits of the claim, the court cannot discern whether any issues of plan term interpretation are in play. Accordingly, the court also must resolve whether the Plan afforded the administrator discretionary authority to determine eligibility for benefits or to construe plan terms.

The Fifth Circuit has emphasized that, "[d]iscretionary authority cannot be implied; an administrator has no discretion to determine eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator." *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 636 (5th Cir. 1992) (citing *Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554, 558 (5th Cir.1990)). The courts do not require any particular "linguistic template;" rather, the plan must be read "as a whole" to determine whether it confers discretionary authority upon the plan administrator or fiduciary. *See Wildbur, supra*. Nonetheless, the plan must *expressly* and *unambiguously* confer discretionary authority upon the administrator to determine entitlement to benefits. *See Cathey*, 907 F.2d at 559.

Defendants contend that the following Plan provisions confer the administrator with

---

medical service. *See* Jan. 7, 2014, Letters from Vantage to medical providers [doc. # 50].

discretionary authority to determine eligibility for benefits or to construe plan terms,

1) "Medically Necessary" services are defined to include "services or supplies, which under the provisions of the contract, are determined to be" necessary under five listed factors. (Admin. Record, pg. 35).

2) "Utilization Review/Quality Management" is defined as "a function performed by Vantage or its designee to review and approve or deny authorization or payment for Covered Services as to the Medical Necessity and quality of the care and compliance with agreed-upon policies procedures and protocols established by Vantage's Board of Directors." (Admin. Record, pg. 38).

3) "Vantage Allowable" is defined as "the amount Vantage would pay to a Participating Provider for the Covered Service . . . as determined by Vantage." (Admin. Record, pg. 38).

4) "Vantage Medical Management staff makes sure that a Hospital stay is Medically Necessary and appropriate for inpatient care." (Admin. Record, pg. 27).

5) Vantage exercises sole, "final approval and discretion for determining whether services or supplies or days of care are Medically Necessary." (Admin. Record, pg. 67).

6) Vantage retains "sole discretion" to determine "whether any given service or supply is excluded as "experimental or investigational." (Admin. Record, pg. 68).

7) The Plan authorizes a member to appeal and request that Vantage "reconsider and change a decision related to Covered Services." (Admin. Record, pg. 88). The first-level internal appeal "will be adjudicated . . . to ensure independence and impartiality without regard to the initial denial." (Admin. Record, pg. 89).

The court is not satisfied that the foregoing excerpts establish that the administrator enjoys discretionary authority to interpret plan terms and determine eligibility for benefits. In *Cathey*, despite plan language according the insurance company with authority to render a "final decision on a claim for benefits," the court determined that this was not the type of express and unambiguous language necessary to confer discretionary authority. *Cathey*, 907 F.2d at 559-560

(emphasis in original).   The court contrasted the foregoing plan language from such cases where 1) the plan conferred the fiduciary or administrator with "the power to determine all questions arising . . ." under the plan "including the power to determine the rights or eligibility of Employees . . ." that were "binding on all persons"; and 2) the fiduciary enjoyed "full and exclusive authority to determine all questions of coverage and eligibility." *Id*. (citations omitted).

Here, as in *Cathey*, the Plan excerpts identified by defendants remain silent regarding the discretion to be exercised by the administrator to render claim decisions.  Indeed, the provision authorizing Vantage's first-level internal appeal only ensures that the review is independent and impartial.  Moreover, the remaining Plan provisions cited by defendants all relate to Vantage's discretionary authority to determine what procedures are "medically necessary" and "experimental or investigational."  However, the court is not persuaded that the Plan's grant of discretionary authority in these two limited instances reflects an express and unambiguous bestowal of discretionary authority upon the administrator to construe and interpret plan terms overall.  If anything, the limited grant supports the opposite inference.  Needless to say, if the court is called upon to infer discretionary authority from disparate plan provisions, then the alleged conferral is neither express, nor unambiguous.  *See Bruch, supra* (no evidence that the administrator had authority to construe uncertain terms).

Accordingly, in the event that any issues of plan term interpretation arise in the course of these proceedings, the court shall review the issue(s) *de novo*. *Id*.

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion for partial summary judgment (styled as a motion for declaratory judgment) [doc. # 52] filed by plaintiff Carl DeWayne Wright be

GRANTED, and that in the event any issues of plan term interpretation arise in the course of plaintiff's claim for wrongful denial of benefits, the court shall review the issue(s) *de novo*. Fed.R.Civ.P. 56

IT IS FURTHER RECOMMENDED that the joint motion for partial summary judgment [doc. # 54] filed by defendants Vantage Health Plan, Inc., Louisiana Corrugated Products, LLC, and U.S. Corrugated, Inc., be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 12th day of March 2015.

                                                       KAREN L. HAYES
                                                      UNITED STATES MAGISTRATE JUDGE